Price, J.
At the date of the contract involved in this case, to-wit, the 30th day of July, 1881, the Globe Insurance Company, and the Union Insurance Company, owned adjoining premises situated on the north side of West Third street, between Walnut and Vine streets, in the city of Cincinnati. The two properties formed one large building, mostly rented for offices, and they had a common hallway through the center, the line of separation of the respective premises running through the center of this hallway from the front to the rear end of the buildings. Each building was at least three stories in height. At that time office room in these buildings was in fair demand, and the two companies, seeking to promote their common interests, and to that end to increase the comfort and conveniences of tenants in their respective buildings, as well as to hold present and attract other tenants, entered into the contract set out in the statement of this case. It was drawn with apparent care and executed with more than ordinary formalities. Its terms were executed by the corporation constructing and placing in the hallway an elevator properly equipped and ready for use, and the location and construction of the coal bins and closets mentioned in the contract. Up to this time, the stairway and skylight were used in common by both proprietors, and this stairway *464 being on the side of the hall owned by the Globe Insurance Company, the coal bins, closets and other conveniences were- placed on the different floors on the side of the hall belonging to the Union Insurance Company. For the space these occupied, the Globe was to pay the Union Insurance Company the sum of $60 per annum. The elevator was installed, one-half on the land of one, and the other half on the land of the other. For the making and maintaining these improvements, the companies were to be equally liable.
Each company performed its part under this contract until the 23 d day of November, 1883, when the Union Insurance Company sold its premises to Joseph W. Wayne, who until then had been a member „of its board of directors, and which relation he sustained when the contract involved was executed. By arrangement between the companies, all bills incurred for the joint operation of the elevator and keeping up the other conveniences provided for, were paid by the Globe Insurance Company and a bill rendered to the other company for its share, which was always promptly paid. And this method of conducting the joint enterprise was continued with Mr. Wayne the purchaser, from the date of his purchase until about the 5th of May, 1900, to which time Wayne, without objection, paid his share of the expenses, but bills were rendered him thereafter for his one-half as before, but he declined to longer pay for the expenses of repair and operation of the elevator. He manifested a willingness to pay his half of maintaining the other conveniences, and in its account rendered him at the regular periods, the plaintiff gave him credit for the sum of $60, *465 agreed to be paid annually by the plaintiff for the use of the space occupied by the coal bins, water closets, etc.
As we understand the case, the real controversy between the plaintiff, the Globe Insurance Company, and Wayne, is over his liability for half the expense of maintaining and operating the elevator after he ceased using it, April I, 1901. This item was considerable when compared with the others, and when a demand for offices in these buildings declined by reason of business leaving Third street for other and higher points in the city, the defendant concluded he would refuse to longer support the elevator. If he could legally do that, he could as well repudiate the contract in any other respect. The lower courts took the view that Wayne could thus free himself from the obligations of the contract notwithstanding the demand of the plaintiff company that he comply with it, as his grantor, the Union Insurance Company, had done, and as he had done from November 23, 1883, when -he became owner, until about May 5, 1900. In so holding, the lower courts committed error. Such a privilege could not have been contemplated by either party to the contract, for all its recitals and provisions point the other way.
The owners of the two properties had a common want to be supplied, and it was relating to improvements of their real estate. One of the things agreed upon as necessary was an elevator to be in the area or rotunda at the north end of the common entrance-way into said buildings, to afford convenient access to the upper stories of - both buildings. The elevator was provided *466 and equipped and placed on the line dividing the two premises, and it was expressly stipulated that this “elevator is to be used for the mutual accommodation of each of said buildings.” The coal bins and water closets, and perhaps some other conveniences, were, by the agreement, placed on the different floors of the Union Insurance Company building, or rather on the side of the halls owned by it.
These so-called conveniences were there placed, the contract says, because “the common stairway used, owned and occupied jointly for the accommodation of both of said buildings, is on the side of the building owned by the Globe Insurance Company, making it impracticable to place such conveniences on that side.” Further, “these conveniences "for the accommodation of both of said buildings are to be placed in convenient position and with as little inconvenience and waste of room as possible, on the side of the Union Insurance Company, and when so placed are to be held in common and for the accommodation of both of said buildings, the same as the common entrance, the passages, stairway, elevator or any other convenience held in common by the two buildings.”
These were in the class of permanent improvements, and they were so retained and used at all times thereafter, at least to April 1, 1901. After providing for the payment of the expenses of making and maintaining these improvements, the contract further provides: “And so long as the buildings shall remain, each party, its heirs or assigns, shall have the free use in common with the other party, its heirs or assigns, of the *467 premises and the works so made and designated for the common benefit as above stated, and neither party, its heirs or assigns, shall, without the consent of the other, its heirs or assigns, obstruct, destroy, remove, alter, or in any way injure or incumber the same, and if there shall be at any time hereafter any necessary expenses 'for the benefit of the premises to be used in common, such as necessary repairs and supervision, half the expenses thereof shall be paid by each party, its heirs or assigns
These provisions are very clear and significant. They recognize the fact and stipulate with reference thereto, that the construction of the elevator shaft and other fixtures necessary to the operation of the elevator, as well as the building of the coal bins, water closets, etc., were additions to the real estate owned by the two companies, and that they were contemplated as permanent improvements of their respective buildings. -Their common or joint use was to be permanent. Like tire common skylight and common entrance hall and upper halls, these improvements and the right to their use would pass with a transfer of the real estate of either party. If the common skylight should be damaged, or the common entrance or other halls should need repairs in order to serve. the common purpose, the law, without any contract to that effect, would hold each company for its share of the expense of restitution or repair. To fix the legal standing of the parties as to the new and common improvements, they distinctly committed their mutual obligations to writing, and stipulated that when executed, the instrument should be duly *468 recorded upon the records of Hamilton county, which, we understand, was done. The contract having fully and carefully provided for the mutual rights and liabilities of each company, neither could abandon performance without the consent of the other, and on refusal to perform the imposed ■ obligation to pay one-half the expense of making and maintaining the common improvements, the defaulting company would be amenable in a court of justice for such default. Any other holding would permit a party to receive a valuable and permanent addition to his estate without incurring any correlative responsibility. The contract is founded on mutuality and could terminate only by mutual consent.
But it is claimed, that however the question might be decided, if it arose between the two insurance companies, the ground of such decision does not exist against Wayne, who succeeded the Union Insurance Company in title by purchase and conveyance of its premises. In other words, the claim is, that the contract does not contain any covenant with reference to the above improvements, that “runs with the land,” and therefore when Wayne ceased to use the elevator he was no longer liable for repairing, operating or maintaining it. In the brief for defendants in error (p. 5) it is said: “We think it is a well-settled principle of law that there must be privity of estate to sustain the application of the doctrine of a covenant running, with the land. There is no privity of estate between the parties to the contract in issue.” And again: “The contract with reference to the payment for making-the improvements and maintaining them and *469 keeping them in repair in the contract between the insurance companies was purely personal; it did not run with the land; it was not imposed upon Wayne as grantee of the Union Insurance Company. Any necessary expenses for the benefit of tire common premises to be used in common, such as necessary repairs and supervision, shall be paid one-half by each party and its heirs and assigns. But this clearly does not cover the expense of operating the elevator.” And so the lower courts found.
We are’ not disposed to discuss the question whether this contract contains a “covenant running with the land” that will make Wayne liable for half of the expense of maintaining the elevator, although it would seem that if there is such a covenant that covers half of the expenses of keeping and maintaining the other conveniences mentioned, — which is not denied — it would also embrace the maintaining of the elevator, which is as much a fixture as the others. But we do not rest our opinion on a covenant running with the land, but are willing to plant it upon the claim of counsel that it was personal as between the insurance companies. Then, what follows as to the situation of Wayne? As before stated, he was a member of the directory of the Union Insurance Company and had an office in its building where and when the improvements were made, and knew of their joint and common use from the time they were put in the buildings. If the contract was not a recordable instrument so that its record would give him notice of its contents, he acquired that knowledge in some way, for in the deed of conveyance which he received from *470 the company, is the following clause, after a description of the premises: “Also all the right, title and privilege secured to said Union Insurance Company under a certain contract or agreement made July 30, 1881, between said Union Insurance Company and the Globe Insurance Company of Cincinnati, which contract relates to the joint use and ownership of certain specific portions of the adjoining premises by said companies respectively.” •
If he acquired all the right, title and privilege secured by that contract, he certainly had knowledge of all of its terms. This is demonstrated by the fact, that for more than six years after he accepted said deed, he' regularly paid the one-half of the expenses of keeping up and maintaining the improvements, including the elevator, and the Globe Insurance Company, knowing of his purchase from the Union Insurance Company, rendered the bills for his half of such expenses to him, and received payment thereof accordingly. These facts constitute more than an adoption of the contract. There was a novation of parties to the contract whereby all the burdens it imposed on the Union Insurance Company became the burdens of Wayne, and all the binding terms }f mutuality creating mutual rights and liabilities before resting on his grantor were assumed by him. He, with the knowledge and consent of the Globe Insurance Company, became the new party in the place of the other company, and he proceeded to perform its part of the agreement and continued so to do for oyer six years, as above stated.
Here we have all the necessary elements of the *471 doctrine of novation of parties, because, after the purchase by Wayne, the Union Insurance Company passed out of all participation in the affairs of the buildings. It is not necessary to cite authorities on the doctrine of - novation of contract or novation of parties to a contract, for they are abundant. _ This- court had occasion to consider the subject in Union Central Life Insurance Co. v. Hoyer, 66 Ohio St., 344. It was there held: (1) That a written contract whereb}^ one party employs another to render services for a fixed period and at a stated rate of compensation, may be discharged as to the employer by the assumption of its obligations to the employe by a third person with the knowledge, consent and to the acceptance of the employe, and such consent and acceptance may rest in parol. (2) The consent -to and acceptance of the terms of such contract of novation, need not be express, but the same may be implied from the facts- and circumstances attending the transaction and the conduct of the parties thereafter.
The principles announced in that case are not new to the legal world and may be regarded as long established law applied to the facts of that case, and they are quite satisfactory here. Hence, if the contract contains no covenant running with the land acquired by Wayne, he, with the consent and to the acceptance of the Globe Insurance Company, became a new party and was substituted for the Union Insurance Company.
Speaking of the clause quoted above from the deed to Wayne, counsel for defendants in error say in the brief (p. 4): “The right of a joint use *472 of the elevator under the said contract was given to Joseph W. Wayne and his heirs and assigns by the deed from the Union Insurance Company. But there was no obligation imposed on Joseph W. Wayne to use the elevator.” Neither was there any obligation imposed upon him by law, to receive sunshine and light from the common skylight, nor to use the common halls or stairways, yet who would say he was not liable for his share of the expense of needed repairs of the common property becaüse he did not use it? And we have not yet been told by counsel why Wayne may be held for half the expenses of keeping up the coal bins, water closets, etc., and not liable for the expenses of keeping up or maintaining the elevator. The nearest approach to furnishing the distinction is found on same page of counsel’s brief, where counsel say: “It is contended on the part of plaintiff in error, that the word ‘maintain’ (in the contract) is broad enough to cover the expense of running the elevator. The word ‘maintain’ does not mean to operate.” And counsel then proceed to experiment with various lexicons where that word is defined, and seem unable to discover in any of them a definition or synonym broad enough to meet plaintiff’s claim. But the parties who executed the contract, perhaps did not examine the lexicons to ascertain the literal meaning of the word “maintain” when standing alone. They knew what they intended and we think that the valuation placed on the word by learned' counsel is entirely too cheap. Why not search for its meaning in the context and other parts of the *473 contract — the subject-matter and the necessities sought to be provided for when they were contracting for a convenient means of lifting their tenants from the lower to the upper stories of their buildings? Why not consider the meaning ascribed by the subsequent conduct of the parties, including the conduct of Wayne himself after he became one of the owners of these common improvements, before we conclude, that to “maintain” the elevator simply means to put it in and have it stand idle at the behest of one of the parties ?
We presume no such construction was ever given the word before the case reached the courts. It was never so construed by any of the parties to the contract where it is found. As late as June 8, 1903, the authorized agent of Joseph W. Wayne, by letter regarding the account urged by the Globe Insurance Company, used this language: “As I cah not rent my rooms on a basis that pays me to run the elevator, I have decined to pay any part of that expense since April 1, 1901. I suggest that we mutually agree to the cancellation of the old agreement of ’8i and make agreement to continue sharing the regular expenses, exclusive of elevator as before mentioned, etc., * * *.” A cancellation by mutual agreement was then regarded as the proper course to end further liability.
On the whole case we are of opinion, that the plaintiff should have recovered in the lower courts, not only in the amount found in its favor, but also for the balance of its claim subject to all proper credits.
*474 The judgments of the lower courts are reversed, and the plaintiff in error, has judgment for the amount of its claim subject to an}' legal credits.

Judgments reversed.

Si-iauck, C. J., Crew, Spear and Davis, JJ., concur.